IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD WAYNE COOLEY,

       Petitioner,                No. CIV S-05-0870 FCD DAD P

vs.

ROSANNE CAMPBELL, et al.,

       Respondents.           FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on May 30, 2003, in the Sacramento County Superior Court on charges of forcible rape of a child, unlawful sex with a child under the age of 16, lewd conduct with a child, and assault with intent to commit rape, with findings that he also tied or bound the victim in the commission of two of the counts against him. He seeks relief on the grounds that: (1) the trial court violated his rights to due process and equal protection and abused its discretion when it admitted evidence of his propensity to commit sex offenses; (2) the jury instructions regarding propensity evidence violated his right to due process; (3) the trial court violated his right to counsel by denying his motions for substitution of counsel; (4) the trial court violated his right to due process when it failed to hold an adequate hearing to determine whether he was competent to

1

1   stand trial; and (5) his right to trial by jury was violated during his sentencing proceedings.  Upon

2   careful consideration of the record and the applicable law, the undersigned will recommend that

3   petitioner's application for habeas corpus relief be denied.

4                              PROCEDURAL AND FACTUAL BACKGROUND[1]

5          A jury convicted defendant Ronald Wayne Cooley of forcible rape
           of a child (three counts, Pen. Code, § 261, subd. (a)(2)); unlawful
6          sex with a child under the age of 16 (Pen.Code, § 261.5, subd. (d));
           lewd conduct with a child (Pen.Code, § 288, subd. (c)(1)); and
7          assault with intent to commit rape (Pen.Code, § 220).  The trial
           court sentenced defendant to state prison for a term of 22 years 8
8          months, plus 15 years to life.

9                                              * * *

10         When Monica M. was 12 years old, she lived in a Sacramento
           apartment with her mother and defendant, who was her stepfather.
11         At that time, defendant would enter her room in the middle of the
           night on a regular basis, lift her shirt over her head to fondle her
12         breasts, and reach his hand down her shorts to touch her vagina and
           buttocks.  Defendant did this once or twice a week until Monica
13         turned 14.  Monica would squirm away from defendant to get him
           to stop, but she never told anyone.
14
           In high school, Monica joined the wrestling team.  Almost every
15         night Monica would play wrestle with defendant.  Defendant
           would often pin her on her stomach and grind his pelvis into her
16         buttocks.  His penis was usually erect.

17         One day during Monica's ninth grade Christmas break, and while
           her mother was at work, defendant brought home a bottle of
18         peppermint schnapps.  Defendant and Monica played poker and
           each time one of them lost a hand, the loser would have to take a
19         shot of alcohol.  The game evolved into strip poker.  They played

20  _____

21         [1]  The following summary is drawn from the October 19, 2004 opinion by the California
    Court of Appeal for the Third Appellate District (hereinafter Opinion), designated as
22  respondent's lodged document 3, at pgs 1-7.  This court presumes that the state court's findings
    of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.
23  28 U.S.C. § 2254(e)(1); <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2004).  "Clear and
    convincing evidence " within the meaning of § 2254(e) "requires greater proof than
24  preponderance of the evidence" and must produce "an abiding conviction" that the factual
    contentions being advanced are "highly probable."  <u>Cooper v. Brown</u>, 510 F.3d 870, 919 (9th
25  Cir. 2007) (quoting <u>Sophanthavong v. Palmateer</u>, 378 F.3d 859, 866 (9th Cir. 2004)).  Although
    petitioner draws the court's attention to other facts he believes are pertinent, he does not disagree
26  with the statements of facts contained in the opinion of the California Court of Appeal.  (<u>See</u>
    Traverse at 4.)  The court will therefore rely on the state court's recitation of the facts.

                                                  2

strip poker until Monica was naked.  Defendant and Monica went
into Monica's room and lay down on her bed to watch a movie.
Defendant told Monica not to put her clothes back on.  Defendant
touched her breasts and got on top of her.  Monica tried to resist,
but defendant inserted his penis into her vagina.  Monica was in
pain and continually tried to get him off of her.  Defendant held her
down as he continued to have intercourse with her.  When
defendant was finished, he told Monica to take a shower and not to
tell anyone.

One afternoon between January and July 2002, while Monica was
taking a shower and her mother was asleep in another room,
defendant entered the bathroom.  Defendant removed his shorts
and got in the shower with Monica.  Defendant grabbed Monica's
wrist and turned her so she was facing away from him.  Defendant
pinned Monica against the wall, tried to get up against her, and
touched her buttocks.  Eventually, defendant told Monica to finish
her shower and got out.  When Monica finished her shower, she
went to her room and tried to get dressed.  Defendant went into
Monica's room, ran his hand up her thigh and pushed her face
down onto her bed.  Defendant got on top of her and started
grinding his pelvis against her buttocks.  Monica did not call out to
her mother.

On July 1, 2002, Monica was home alone with defendant.
Defendant entered Monica's room, grabbed her wrists and
handcuffed her to the bed.  Monica kicked and squirmed as she
tried to get her wrists free.  As defendant removed Monica's
clothes, she kicked him.  Defendant left the room and returned with
a yellow fishing rope, which he used to tie her ankles to the
footboard.  Defendant undressed, left the room and returned with a
condom.  He put on the condom and began having intercourse with
her.

Monica was in pain and uncomfortable and complained to
defendant the rope was hurting her ankle.  Defendant untied her
right ankle and penetrated her vagina with his penis again.

Monica began screaming and trying to kick with her free leg.
Defendant then taped her mouth shut and continued to have sex
with her.  Defendant told Monica he would remove the handcuffs
and leave her alone if she would perform oral sex.  Monica
reluctantly agreed.  Defendant untied her left ankle and removed
one handcuff.  But as he brought his penis to Monica's mouth she
refused.

Defendant handcuffed Monica's free hand and continued having
sex with her.  After about 20 minutes, defendant removed the
handcuffs, untied her and ordered her to take a shower.  Monica
did not tell anyone what defendant did.

3

A couple of days later, defendant told Monica he did not believe prior statements that she had been a virgin, and if she ever lied to him again, he would rape her again.  Monica decided to tell her mother.  Monica wrote her mother a letter and explained defendant had raped her and she was moving out.

On July 11, 2002, Sacramento County Deputy Sheriff Angela Langier responded to a call about defendant's sexual assault of Monica.  Monica and her mother gave Deputy Langier the letter from Monica to her mother and several pages of e-mail correspondence reflecting communications between Monica and defendant posing as "John Jones."  Deputy Langier examined Monica's wrists and ankles and observed bruising.

Steven Osborne, a detective assigned to the Child Abuse Bureau with the Sacramento County Sheriff's Department, conducted a follow-up investigation the following evening.  Detective Osborne seized two yellow fishing stringers, a pair of handcuffs, a partial roll of duct tape, Monica's bedding, a partially filled bottle of peppermint schnapps, and a computer.

Detective Osborne also set up a pretext phone call so Monica could confront defendant about the rape.  The conversation was recorded.  Monica offered to recant if defendant promised not to touch her again.  Defendant promised never to touch Monica again, told her they will not be left alone again, and apologized for everything that happened.

On July 15, 2002, Cathy Boyle, a nurse practitioner at the U.C. Davis Medical Center, gave Monica a complete physical examination.  Boyle discovered a healed deep tear trauma on Monica's hymen.  In Boyle's expert opinion, Monica's condition was consistent with sexual abuse.

Detective Vincent Recce, a computer expert for the Sacramento County Sheriff's Department, examined the contents of the computer seized by Detective Osborne.  All of the e-mails had been deleted from the hard drive.  Detective Recce was able to recover the contents of defendant's e-mail files.  He found correspondence between defendant, using the address "clown95815@yahoo.com" under the name "John Jones," and Monica.  In the e-mails, between December 2001 and March 2002, defendant told Monica, among other things, "I would like to do you" and "How do you feel I could use you for a sex toy." (Sic.)

At trial, Kimberly Sable and Esther Cortes, former coworkers of defendant at "Things Remembered," testified that defendant had touched them inappropriately and made sexual comments to them while at work.  Sable, who was 17 when she worked under defendant's supervision, testified defendant asked her, among other things, "How do you like to be handled," and whether she wore a

4

g-string or thong.  On a separate occasion, defendant grabbed
Sable's hand and put it down his pants, touching his penis.  Cortes
testified defendant, also Cortes's supervisor, grabbed her buttocks
on several occasions and stated, "I can't help it" and "Esther, you, I
would do."  Both women were successful in their sexual
harassment suits against defendant.

Defendant testified on his own behalf.  He admitted buying
peppermint schnapps for Monica and playing poker, but denied
playing strip poker and touching her.  Defendant admitted to
horsing around by handcuffing and hog-tying Monica, but denied
ever raping or having sex with her.  Defendant denied the sexual
misconduct involving Sable and Cortes.

Defendant testified he set up the "clown95815" e-mail address as a
concerned parent and posed as a teenager to find out about
Monica's conduct.  Defendant also testified he knew the pretext
phone call from Monica was being recorded.

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

(1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim -

     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

     The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. <u>Admission of Propensity Evidence</u>

           Petitioner's first claim is that the trial court violated his Fourteenth Amendment rights to due process and equal protection, and abused its discretion under state law, when it admitted into evidence prior acts of misconduct to show petitioner's propensity to commit sex offenses.  (Points and Authorities attached to Petition, (hereinafter Pet.) at 11- 24.)  Specifically, petitioner objects to the admission of evidence regarding the incidents with Kimberly Sable and Esther Cortes and the e-mails between himself and the victim.  The California Court of Appeal rejected petitioner's arguments with respect to these claims, reasoning as follows:

> Over defendant's objection, the trial court admitted testimony by Kimberly Sable and Esther Cortes of defendant's prior uncharged conduct and e-mail correspondence between Monica and defendant posing as "John Jones."  The court determined the evidence was admissible pursuant to Evidence Code section 1108 to show propensity to commit sexual crimes, and Evidence Code section 1101, subdivision (b), to show intent.  The court also ruled the evidence was not unduly prejudicial under Evidence Code section 352.  Defendant argues the trial court's rulings violated his constitutional rights to due process and equal protection.  We disagree.
>
> A. <u>Due Process Challenge to Evidence Code Section 1108</u>
>
> Defendant contends admitting evidence pursuant to Evidence Code section 1108 to show propensity to commit sex offenses violated his federal constitutional right to due process.[2]  However, the California Supreme Court held Evidence Code section 1108 does not violate due process.  (<u>People v. Falsetta</u> (1999) 21 Cal.4th 903.)  As defendant recognizes, we are bound by that decision.  (<u>Auto Equity Sales, Inc. v. Superior Court</u> (1962) 57 Cal.2d 450 .)
>
> B. <u>Equal Protection Challenge to Evidence Code Section 1108</u>
>
> Defendant asserts admitting evidence pursuant to Evidence Code section 1108 violated his federal constitutional right to equal protection because the statute treats those accused of sex offenses

---

    [2]  Evidence Code section 1108, subdivision (a), reads: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

differently from those accused of other crimes.  Defendant's assertion fails.

"An equal protection challenge to a statute that creates two classifications of accused or convicted defendants, without implicating a constitutional right, is subject to a rational-basis analysis.  [Citation.]  [¶] Evidence Code section 1108 withstands this relaxed scrutiny.  The Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses.  This reasoning provides a rational basis for the law . . . .  In order to adopt a constitutionally sound statute, the Legislature need not extend it to all cases to which it might apply.  The Legislature is free to address a problem one step at a time or even to apply the remedy to one area and neglect others.  [Citation.]"  (People v. Fitch (1997) 55 Cal. App.4th 172, 184-185.)

C.   Admitting Evidence Under Evidence Code Section 1101

Defendant asserts the uncharged conduct evidence lacked sufficient similarity to the charged crimes to prove intent under Evidence Code section 1101, subdivision (b).  Because the evidence is admissible as propensity evidence pursuant to Evidence Code section 1108, we need not discuss this issue.

D.   Abuse of Discretion Under Evidence Code Section 352

Defendant contends even if the evidence was admissible, the trial court abused its discretion by failing to exclude the evidence under Evidence Code section 352.[3]  Defendant's contention is without merit.

The determination to exclude or admit propensity evidence under Evidence Code sections 1108 and 352 is "entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence."  (People v. Falsetta, supra, 21 Cal.4th at pp. 917-918.)  Unless the trial judge acted capriciously and beyond the bounds of reason, we must affirm.  (People v. Poplar (1999) 70 Cal. App.4th 1129, 1138.)  This case is not even close.

Before making the decision to admit the propensity evidence, the trial court considered Evidence Code section 352 and whether the propensity evidence was more inflammatory than testimony

---

[3]  Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

relating to the charged offense.  It considered whether there was a risk of confusing the jury, the remoteness in time of the uncharged acts to the charged acts, the risk of undue consumption of time, and whether the evidence was cumulative.  After balancing these factors against the evidence's probative value, the court determined the probative value outweighed the prejudicial impact.  Under these circumstances, it did not abuse its discretion in doing so.

All relevant evidence is prejudicial to a criminal defendant.  But Evidence Code section 352 focuses on undue prejudice when it balances the prejudicial effect with the probative value of the evidence.  Defendant was charged with multiple counts of forcibly raping a child.  The propensity evidence describing defendant's uncharged acts were not stronger and no more inflammatory than Monica's testimony describing the rape.  (See People v. Harris (1998) 60 Cal. App.4th 727, 738.)  Thus, the propensity evidence did not create a substantial danger of undue prejudice.  It was relevant to show defendant's disposition to commit sex offenses and take advantage of younger females under his control or supervision.

(Opinion at 7-10.)

### 1.  Due Process Violation

#### a.  Prior Uncharged Acts

Petitioner first contends that admission into evidence of the testimony of Kimberly Sable and Esther Cortes violated his clearly established due process rights.  However, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes."  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").  See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in

9

determining that the propensity evidence introduced against the defendant did not violate his

right to due process); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006), cert. denied,

549 U.S. 1287 (2007) (rejecting the petitioner's claim that the introduction of propensity

evidence violated his due process rights under the Fourteenth Amendment because "the right

[petitioner] asserts has not been clearly established by the Supreme Court, as required by

AEDPA"); United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting

admission of evidence of similar crimes in child molestation cases, under which the test for

balancing probative value and prejudicial effect remains applicable, does not violate the Due

Process Clause).  Accordingly, the state court's decision rejecting this claim is not contrary to

United States Supreme Court precedent.

Further, any error in admitting this testimony in petitioner's case did not have "a

substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

Abrahamson, 507 U.S. 619, 637 (1993).  See also Penry v. Johnson, 532 U.S. 782, 793-96

(2001).  The record reflects that the state trial judge struck an appropriate balance between

petitioner's rights and the clear intent of the California legislature that evidence of prior similar

acts be admitted in sexual offense prosecutions.  The trial court held a hearing on the

prosecutor's pre-trial in limine motion to introduce evidence of petitioner's uncharged acts

involving Kimberly Sable and Esther Cortes and concluded that the challenged evidence was

relevant, appropriate, and allowed by California law.  (Reporter's Transcript on Appeal (RT) at

165-265.)  The trial court instructed the jury at the close of the evidence that if they found that

petitioner had committed the prior sexual offenses they could, but were not required to, infer that

the defendant had a disposition to commit sexual offenses.  (Clerk's Transcript on Appeal (CT)

at 130.)  The jury was also instructed that if they found that petitioner had such a disposition,

they could, but were not required to, infer that he was likely to have committed the charged

offenses.  (Id.)  These instructions did not compel the jury to draw an inference of propensity;

they simply allowed it.  Finally, the jury was directed that it should not consider petitioner's prior

conduct, or evidence thereof, as proof that petitioner committed the crimes charged in the information.  (Id.)  The jury instructions, viewed in their entirety, correctly informed petitioner's jury that the prosecution had the burden of proving all elements of the crimes against petitioner beyond a reasonable doubt.  (See e.g., id. at 120, 141.)  Further, "[n]othing in the text of § 1108 suggests that the admissible propensity evidence would be sufficient, by itself, to convict a person of any crime. Section 1108 relates to admissibility, not sufficiency."  Schroeder v. Tilton, 493 F.3d 1083, 1088 (9th Cir. 2007) (admission of evidence of defendant's prior sex crimes did not violate Ex Post Facto Clause).

        Although the prior crimes evidence was potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself."  LeMay  260 F.3d at 1030.  In any event, as noted by the California Court of Appeal, the prior acts evidence here was not nearly as inflammatory as the allegations against petitioner involving the victim in this case.  "In sum, § 1108 creates an exception to the general ban on propensity evidence, so that evidence of prior sexual misconduct may be presented to the jury to demonstrate propensity to commit the crime charged, provided that the prejudicial value of that evidence does not substantially outweigh its probative value."  Schroeder, 493 F.3d at 1087.  That was the case here.

        Accordingly, for all of these reasons, petitioner is not entitled to relief on his due process claim.

        b.  E-Mail Correspondence Between Petitioner and the Victim

        Petitioner also claims that the admission of evidence of the e-mail correspondence between himself, posing as "John Jones," and the victim violated his right to due process because it "had little, if any relevance to the charged crimes and was likely to confuse the issues."  (Pet. at 23.)  Petitioner informs the court that he "engaged in the correspondence in his role as a parent to determine whether she was engaged in improper activities at school."  (Id.)

        A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory

1   provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.

2   See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20

3   (9th Cir. 1991).   Accordingly, a federal court cannot disturb a state court's decision to admit

4   evidence on due process grounds unless the admission of the evidence was "arbitrary or so

5   prejudicial that it rendered the trial fundamentally unfair."   See Walters v. Maass, 45 F.3d 1355,

6   1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986).   In addition, in order

7   to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error was

8   one of constitutional dimension and that it was not harmless under Brecht.   As noted above, in

9   order to grant relief, the habeas court must find that the error had "'a substantial and injurious

10   effect' on the verdict."   Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht,

11   507 U.S. at 623).

12         Petitioner's trial was not rendered fundamentally unfair because of the admission

13   of evidence regarding the e-mail correspondence between himself and the victim.   Although the

14   evidence was damaging, it was not irrelevant, unreliable, or unduly prejudicial.   Nor was it so

15   highly inflammatory or emotionally charged as to necessarily prevent a fair trial.   Accordingly,

16   petitioner is not entitled to relief on this claim.

17                     2. Equal Protection Clause

18         Petitioner has also failed to demonstrate that the admission of prior crimes

19   evidence pursuant to California Evidence Code § 1108 is violative of the federal Equal

20   Protection Clause.   In LeMay, the court held that Federal Rule of Evidence 414 did not violate

21   the Equal Protection Clause because it did not discriminate against any group of individuals on

22   the basis of a suspect or quasi-suspect class and did not infringe on a fundamental right.   260

23   F.3d at 1030 (defendants have "no fundamental right to have a trial free from relevant propensity

24   evidence that is not unduly prejudicial").   Because Rule 414 did not burden a fundamental right

25   and because sex offenders are not a suspect class, the court found the rule was constitutional so

26   long as it bears a "reasonable relationship to a legitimate government interest."   Id. at 1031.   The

court observed that Rule 414 allowed prosecutors to introduce relevant evidence in furtherance of the legitimate government interest of prosecuting and convicting sex offenders.  Id.  On this basis the court found the equal protection challenge to Rule 414 to be without merit.  Id.  As in LeMay, the class of sex offenders is not a suspect class here.

Further, California Evidence Code § 1108 does not infringe on a fundamental right because petitioner has no fundamental right to a trial free from relevant propensity evidence that is not unduly prejudicial.  See LeMay, 260 F.3d at 1030.  Section 1108 bears a reasonable relationship to the legitimate government interest in the effective prosecution of child rape cases.  See id. at 1031.  Petitioner has not demonstrated that the state court decision rejecting his equal protection challenge to California Evidence Code § 1108 was contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to habeas relief with respect to that claim.

### 3.  Abuse of Discretion

Petitioner also claims that the trial court abused its discretion under state law when at trial it admitted evidence of petitioner's prior uncharged acts and the correspondence between petitioner and the victim.  This claim is not cognizable in this federal habeas corpus action.  Estelle, 502 U.S. at 67; Jammal, 926 F.2d at 919 ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").  Accordingly, petitioner is not entitled to habeas relief.

### B.  Jury Instructions on Propensity Evidence

In petitioner's next claim, he argues that the trial court violated his constitutional rights when it instructed the jury on how to evaluate evidence of other sexual offenses, with the 2002 revised version of CALJIC No. 2.50.01.  (Pet. at 25-28.)  Petitioner claims that the instruction allowed the jury to find him guilty of the charged offenses on proof less than beyond a reasonable doubt.  (Id.)  The California Court of Appeal rejected these arguments, reasoning as follows:

1
2

> Defendant argues the trial court's use of the 2002 version of
> CALJIC No. 2.50.01 on propensity evidence violated defendant's
> federal constitutional right to due process.  We disagree.

3
4
5
6

> In <u>People v. Reliford</u> (2003) 29 Cal.4th 1007, the California
> Supreme Court approved the use of CALJIC No. 2.50.01, holding
> the instruction does not violate due process.  The court upheld the
> constitutionality of the 1999 version of CALJIC No. 2.50.01, and
> stated in dicta the 2002 revision used here was an improvement.
> As defendant again acknowledges, we are bound by the decisions
> of the Supreme Court.

7   (Opinion at 10-11.)

8            In <u>Gibson v. Ortiz</u>, 387 F.3d 812, 820 (9th Cir. 2004), <u>overruled on other grounds</u>

9   <u>by Byrd v. Lewis,</u> 566 F.3d 855, 866 (9th Cir. 2009), the Ninth Circuit Court of Appeals held that

10  the 1996 version of CALJIC No. 2.50.01 and CALJIC No. 2.50.1, when given together at a

11  criminal trial, violate the defendant's Fourteenth Amendment due process rights to be proven

12  guilty beyond a reasonable doubt because they allow a jury to: (1) find that a defendant had

13  committed prior sexual offenses by a preponderance of the evidence; (2) infer from those past

14  offenses a predilection for committing sexual offenses; and (3) further infer guilt of the charged

15  offense based on those predilections.  CALJIC No. 2.50.01 was amended in 1999 to clarify how

16  jurors should evaluate a defendant's guilt relating to the charged offense if they found that he had

17  committed a prior sexual offense.  That revision added the following language to the instruction:

18  "However, if you find by a preponderance of the evidence that the defendant committed prior

19  sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he

20  committed the charged crimes."  CALJIC No. 2.50.01 (7th ed. 1999).  The amended instruction

21  also provided that "[t]he weight and significance of the evidence, if any, are for you to decide."

22  <u>Id.</u>  In 2002, CALJIC No. 2.50.01 was revised once again.  The 2002 revision deleted the

23  sentence "[t]he weight and significance of the evidence, if any, are for you to decide," and

24  inserted the following statement:  "If you determine an inference properly can be drawn from this

25  evidence, this inference is simply one item for you to consider, along with all other evidence, in

26  determining whether the defendant has been proved guilty beyond a reasonable doubt of the

1  charged crime." CALJIC No. 2.50.01.  In <u>People v. Reliford</u>, 29 Cal. 4th 1007, 1016 (2003), the

2  California Supreme Court upheld the constitutionality of the 1999 version of CALJIC No.

3  2.50.01, but commented that it had been "improved" by the 2002 amendment.

4          Challenges to the constitutionality of the 1999 and 2002 versions of CALJIC No.

5  2.50.01 have been rejected by both the Ninth Circuit numerous district courts in unpublished

6  opinions.[4]  <u>See</u> e.g. <u>Abel v. Sullivan</u>, No. 08-55612, 2009 WL 1220761, *3 (9th Cir. 2009) (2002

7  version); <u>Smith v. Ryan</u>, No. 05-16072, 220 F. Appx. 563, **3 (9th Cir. 2007) (1999 version);

8  <u>McGee v. Knowles</u>, No. 05-17301, 218 F. Appx. 584, **1 (9th Cir. 2007); <u>Cata v. Garcia</u>, No. C

9  03-3096 PJH (PR), 2007 WL 2255224, *15-16 (N.D. Cal., Aug. 3, 2007) (1999 version); <u>Perez</u>

10 <u>v. Duncan</u>, 2005 WL 2290311 (N.D. Cal., Sept. 20, 2005) (1999 version).  Based on the

11 reasoning of the above-cited opinions, this court concludes that the decision of the state court

12 rejecting petitioner's jury instruction claim is not contrary to or an unreasonable determination of

13 federal law.  Accordingly, petitioner is not entitled to relief on this claim.

14         C.  <u>Motion for Substitution of Counsel</u>

15         Petitioner claims that the trial court violated his constitutional rights when it

16 denied his motions for substitute counsel, made pursuant to <u>People v. Marsden</u>, 2 Cal. 3d 118,

17 126 (1970).  (Pet. at 29-34.)  The California Court of Appeal rejected petitioner's contention in

18 this regard, reasoning as follows:

19             Defendant contends the trial court abused its discretion by denying
               defendant his motions to substitute counsel.  Defendant's
20             contention is without merit.

21             A.  <u>Background information</u>

22             On March 19, 2003, after proceedings commenced, defendant
               requested the trial court relieve his counsel and appoint another
23             attorney to represent him.  The court conducted an in camera
               hearing to review defendant's request.  The defendant stated his
24             attorney had insufficient time to review the discovery and had

25

26         [4]  Citation to these recent unpublished decisions issued after January 1, 2007, is
       appropriate pursuant to Ninth Circuit Rule 36-3(b).

given defendant the erroneous impression the trial was going to be continued.  Defendant stated, "[W]e've never sat down to discuss [Kimberly Sable and Esther Cortes] . . . .  I am not getting the representation that I should be getting."  Defendant's trial counsel admitted he believed the case would be continued one more time. He stated he was in the process of obtaining the discovery so he could begin reviewing it that day.

Counsel also stated the thrust of the defense had been to let things calm down and see if the case ended up in a better posture for a negotiated settlement.  Defendant rejected the offer of 15 years to life his attorney had negotiated.

In denying defendant's March 19, 2003, motion, the trial court stated, "I am confident that [defendant's counsel] understands the issues in this case and that he is prepared once he gets the information that he is currently reviewing and that he has the investigator out acquiring, to very, very competently represent you."

On March 24, 2003, defendant filed a written motion to substitute counsel.  The trial court held a second in camera hearing. Defendant alleged his trial counsel was not adequately representing him, failed to sufficiently confer with defendant, was unprepared, and discussed confidential information with defendant's sisters. The trial court denied the motion and explained defense counsel was competently representing defendant.

B. <u>Analysis</u>

Motions to substitute counsel, established in <u>People v. Marsden</u> (1970) 2 Cal.3d 118, are subject to the following well-known rules. """When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  [Citation.]  A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations.]" [Citations.]'"  (<u>People v. Hart</u> (1999) 20 Cal.4th 546, 603.)

"Denials of <u>Marsden</u> motions are reviewed under an abuse of discretion standard.  [Citation.]  Denial 'is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.  [Citations.]'"  (<u>People v. Barnett</u> (1998) 17 Cal.4th 1044, 1085.)

16

> The trial court provided defendant with two in camera hearings to voice his complaints. Based on the court's observations of counsel's representation of defendant and counsel's statements during the <u>Marsden</u> hearings, the court twice determined defendant was receiving competent representation and effective assistance of counsel. The record demonstrates defense counsel skillfully performed his trial duties and achieved a plea offer less onerous than the eventual sentence. Defendant fails to prove the trial court abused its discretion in denying his motion to substitute counsel.

(Opinion at 11-13.)

Where a defendant is proceeding with the assistance of counsel, he may move to dismiss or substitute counsel, whether appointed or retained. The grant or denial of such a motion may depend on its timeliness and the nature of the conflict between the defendant and current counsel. <u>United States v. Musa</u>, 220 F.3d 1096, 1102 (9th Cir. 2000). In assessing on direct appeal a federal trial court's decision to deny a motion for substitute counsel, three factors are to be considered: "(1) the timeliness of the motion and the extent of resulting inconvenience or delay; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." <u>Id.</u> The trial court's inquiry into a criminal defendant's complaints about his trial counsel must be "adequate to create a sufficient basis for reaching an informed decision." <u>United States v. Mendez-Sanchez</u>, 563 F.3d 935, 942-943 (9th Cir. 2009) (quoting <u>Musa</u>, 220 F.3d at 1102 (quotation omitted)).

However, the Ninth Circuit Court Appeals has also ruled that in assessing such a claim in the context of a § 2254 proceeding such as this, the focus is different than that on direct review. In <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000) (en banc) the court stated:

> Our primary reason for accepting this case for en banc review was to correct the standard of review we have been using to examine the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict. In <u>Bland</u>, we said that the test is whether a

/////

/////

1  state court's denial of such a motion was for an "abuse of
2  discretion." Bland, 20 F.3d at 1475.

                                    * * *

3
4  [O]ur only concern when reviewing the constitutionality of a state-
   court conviction is whether the petitioner is "in custody in
   violation of the Constitution or laws or treaties of the United
5  States." 28 U.S.C. § 2254(a). See also Coleman v. Thompson,
   501 U.S. 722, 730, 111 S. Ct. 2546. 115 L. Ed. 640 (1991) ("The
6  [habeas] court does not review a judgment but the lawfulness of
   the petitioner's custody simpliciter.") (emphasis in original). A
7  particular abuse of discretion by a state court may amount also to a
   violation of the Constitution, but not every state court abuse of
8  discretion has the same effect. Accordingly, to the extent that they
   conflict with this opinion, we overrule Bland and Crandell v.
9  Bunnell, 144 F.3d 1213 (9th Cir. 1998).

10  218 F.3d at 1024-25 (footnotes omitted).  The court in Schell determined that it was "well

11  established and clear that the Sixth Amendment requires on the record an appropriate inquiry into

12  the grounds of [a motion for substitute counsel], and that the matter be resolved on the merits

13  before the case goes forward."  Id. at 1025.  See also Hudson v. Rushen, 686 F.2d 826, 829 (9th

14  Cir. 1982) ("Thus, the state trial court's summary denial of a defendant's motion for new counsel

15  without further inquiry violated the Sixth Amendment.").

16          As set forth above, the trial court held a hearing on both of petitioner's requests

17  for substitute counsel.  (Opinion at 11-12; Reporter's Transcript of Proceedings dated March 19,

18  2003, lodged by respondent on November 13, 2003; Reporter's Transcript of Proceedings dated

19  March 24, 2003, lodged by respondent on November 13, 2003.)  At both hearings the trial court

20  allowed petitioner to fully explain his concerns about his trial counsel.  At each hearing,

21  petitioner's trial counsel responded to petitioner's stated concerns and explained his

22  representation strategy, which consisted, in part, of waiting to see whether conditions would

23  become more favorable for a settlement of the case with the passage of time.  The trial court

24  determined that petitioner was being adequately represented by his trial counsel and therefore

25  denied the Marsden motions.  After a careful review of the lodged documents, the undersigned

26  finds that the trial court made an adequate inquiry into petitioner's complaints and resolved the

                                         18

1    matter on the merits before proceeding with the case.  Accordingly, the trial court's handling of

2    the motion to substitute counsel in this case passes constitutional muster.  <u>Schell</u>, 218 F.3d at

3    1025.

4           Even under the prior "abuse of discretion" standard of review, it appears that the

5    state trial court's resolution of petitioner's <u>Marsden</u> motions was appropriate.  As described

6    above, the trial court conducted an adequate inquiry into the problems which led to the requests

7    for the <u>Marsden</u> hearings.  Although petitioner explained that his trial counsel was not spending

8    enough time with him, it was apparent that counsel was proceeding with petitioner's defense in a

9    reasonable manner and that any lack of communication was not causing a constructive denial of

10   counsel.  There is also no indication that any disagreements resulted in a total lack of

11   communication preventing the presentation of an adequate defense.  Even if petitioner and his

12   trial counsel had a challenging relationship, the Sixth Amendment only guarantees competent

13   representation, not a meaningful relationship.  <u>Morris v. Slappy</u>, 461 U.S. 1, 13-14 (1983).

14   Moreover, at least some of petitioner's complaints arose from differences over trial strategy,

15   which are not appropriate grounds for appointing substitute counsel.  <u>See Schell</u>, 218 F.3d at

16   1026 n.8 (quoting <u>Brookhart v. Janis</u>, 384 U.S. 1, 8 (Harlan, J., dissenting in part)) ("'[A] lawyer

17   may properly make a tactical determination of how to run a trial even in the face of his client's

18   incomprehension or even explicit disapproval.'").

19           Petitioner also complains about this trial counsel's failure to appropriately respond

20   to the evidence concerning petitioner's prior conduct with Kimberly Sable and Esther Cortes.

21   However, petitioner fails to explain what counsel could have differently in this regard that would

22   have resulted in a more favorable verdict.  Petitioner's conclusory statement that counsel's

23   "failure to timely review the discovery, or allow petitioner to review it, effectively precluded

24   meaningful impeachment of the witnesses who testified that petitioner engaged in sexual

25   misconduct with them" is insufficient to establish a violation of petitioner's right to counsel.  <u>See</u>

26   <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not

19

1   supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg,

2   24 F.3d 20, 26 (9th Cir. 1994)).

3          Finally, petitioner has failed to show prejudice resulting from his trial counsel's

4   performance.  A review of the record reflects that trial counsel conducted an able defense and, as

5   noted by the California Court of Appeal, he also negotiated a plea offer that turned out to be

6   more favorable than the sentence petitioner ultimately received.

7          For the foregoing reasons, petitioner has failed to demonstrate that his

8   constitutional rights were violated by the manner in which the Marsden hearings were conducted

9   by the trial judge.  Accordingly, he is not entitled to relief on this claim.

10         D.   Competence to Stand Trial

11         Petitioner's next claim is that the trial court violated his right to due process by

12  "failing to declare a doubt as to petitioner's mental competency when petitioner was on suicide

13  watch during trial."  (Pet. at 34.)  He also argues that the trial judge should have conducted a

14  competency hearing pursuant to Cal. Evidence Code § 1368 when confronted with evidence that

15  petitioner was "actively suicidal and unable to assist in his defense."  (Id. at 35.)  The California

16  Court of Appeal rejected petitioner's arguments in this regard, reasoning as follows:

17         Defendant asserts the trial court abused its discretion by declining
           to declare a doubt as to defendant's mental competency when
18         defendant was placed on suicide watch during trial and by denying
           his motion to be examined by other psychologists.  Defendant's
19         assertion fails.

20         A.   Background information

21         On April 7, 2003, defense counsel informed the court defendant
           had been placed on suicide watch, was unable to accept visitors,
22         and would not be brought to court.  The next day, as defendant
           remained on suicide watch, the court appointed a licensed
23         psychologist, Janice Nakagawa, Ph.D., pursuant to Evidence Code
           section 730 to assist in determining whether there existed a doubt
24         as to defendant's ability to understand the proceedings and
           cooperate with his attorney.

25
           On April 10, 2003, the trial court received the psychologist's
26         report.  The report confirmed defendant had attempted to commit

20

suicide and was presently suicidal.  However, the psychologist concluded defendant's suicidal state "did not stem from any mental health problems," but rather from understanding the possibility of facing life imprisonment if convicted.

Defense counsel raised his doubt about defendant's competency to stand trial, and he requested the court suspend proceedings and appoint two additional experts to review defendant's competency. Based upon the psychologist's conclusions, the trial court refused to declare a doubt as to defendant's competency to stand trial and denied defendant's motion.

B. <u>Analysis</u>

Penal Code section 1367 provides "that a person is mentally incompetent to stand trial if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (<u>People v. Welch</u> (1999) 20 Cal.4th 701, 737.)

Penal Code section 1368 states, in pertinent part, if "a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent."

If there is substantial evidence of incompetence to stand trial, "due process requires that a full competence hearing be held as a matter of right."  (<u>People v. Welch</u>, <u>supra</u>, 20 Cal.4th at p. 738, emphasis omitted.)  Substantial evidence exists if the evidence raises a reasonable doubt regarding defendant's competence to stand trial. (<u>Ibid.</u>)

After the defendant was placed on suicide watch, the court ordered an expert to evaluate defendant to determine whether there existed a doubt as to his competence to stand trial.  The expert's report relayed that defendant was suicidal because he was facing a possible life sentence if convicted.  This conclusion goes directly to whether the defendant was able to understand the nature of the criminal proceedings.  The defendant was suicidal because he understood the nature of the criminal proceedings and the possibility of life imprisonment, not because of a mental illness that resulted in him being unable to understand the nature of the proceedings.

Substantial evidence also supports the trial court's determination because defendant was able to assist counsel in the conduct of his defense in a rational manner throughout the trial.  Initially, while defendant was on suicide watch, defense counsel had limited access to defendant.  But otherwise throughout trial, defendant was

1          able to assist counsel.  Before being placed on suicide watch,
       defendant filed two <u>Marsden</u> motions, during each of which
2          defendant demonstrated he understood what was occurring and
       what was at stake.  He played a cogent, active role in his defense.
3          On April 14, 2003, after being placed on suicide watch, defendant
       testified on his own behalf, demonstrating his ability to assist
4          counsel in a rational manner throughout trial.

5          Under these circumstances, there is substantial evidence of
       defendant's competence to stand trial.  Consequently, the trial court
6          did not abuse its discretion by declining to declare a doubt as to
       defendant's competence to stand trial.

7

8   (Opinion at 13-16.)

9          The conviction of a legally incompetent defendant violates the Due Process

10  Clause of the Fourteenth Amendment.  <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996);

11  <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 510 (9th Cir. 1994).  In federal court, a defendant is

12  incompetent to stand trial if he lacks sufficient present ability to consult with his lawyer with a

13  reasonable degree of rational understanding or lacks a rational as well as factual understanding of

14  the proceedings against him.  <u>Dusky v. United States</u>, 362 U.S. 402 (1960).  <u>See also</u> <u>Godinez v.</u>

15  <u>Moran</u>, 509 U.S. 389, 396 (1993); <u>McMurtrey v. Ryan</u>, 539 F.3d 1112, 1118 (9th Cir. 2008);

16  <u>Douglas v. Woodford</u>, 316 F.3d 1079, 1094 (9th Cir. 2003).  In California, "[a] defendant is

17  mentally incompetent ... [if] the defendant is unable to understand the nature of the criminal

18  proceedings or to assist counsel in the conduct of a defense in a rational manner."  Cal. Penal

19  Code § 1367.

20         In a habeas proceeding, "a petitioner is entitled to an evidentiary hearing on the

21  issue of competency to stand trial if he presents sufficient facts to create a real and substantial

22  doubt as to his competency, even if those facts were not presented to the trial court." <u>Deere v.</u>

23  <u>Woodford</u>, 339 F.3d 1084, 1086 (9th Cir. 2003) (quoting <u>Boag v. Raines</u>, 769 F.2d 1341, 1343

24  (9th Cir. 1985)).  <u>See also</u> <u>Douglas</u>, 316 F.3d at 1094.  A "good faith" or "substantial doubt"

25  exists in this regard "when there is substantial evidence of incompetence." <u>Deere</u>, 339 F.3d at

26  1086 (quoting <u>Cuffle v. Goldsmith</u>, 906 F.2d 385, 392 (9th Cir. 1990)).  The burden of

1    establishing mental incompetence rests with the petitioner. <u>Boag</u>, 769 F.2d at 1343; <u>McKinney</u>

2    <u>v. United States</u>, 487 F.2d 948, 949 (9th Cir. 1973) ("[W]hen the issue of the defendant's

3    competency to stand trial is raised in a § 2255 motion, the burden is upon the defendant to prove

4    that he was not mentally competent to stand trial."); <u>see</u> <u>also</u> <u>Cacoperdo</u>, 37 F.3d at 510 (habeas

5    petitioner bears burden of showing a due process violation).

6           Whether a defendant is capable of understanding the proceedings and assisting

7    counsel depends on "evidence of the defendant's irrational behavior, his demeanor in court, and

8    any prior medical opinions on competence to stand trial." <u>Drope v. Missouri</u>, 420 U.S. 162, 180

9    (1975).  None of these factors is determinative, but any one of them may be sufficient to raise a

10   reasonable doubt regarding competence.  <u>Id.</u>  Finally, the Due Process Clause requires a state trial

11   court to inquire into a defendant's competency <u>sua</u> <u>sponte</u> if a reasonable judge would be

12   expected to have a bona fide doubt as to the defendant's competence.  <u>Pate v. Robinson</u>, 383 U.S.

13   375, 385 (1966); <u>Mendez-Sanchez</u>, 563 F.3d 935, 947 (9th Cir. 2009); <u>Blazak v. Ricketts</u>, 1 F.3d

14   891, 893 & n.1 (9th Cir. 1993).

15          The undersigned agrees with the California Court of Appeal that petitioner has

16   failed to demonstrate that the trial judge violated his right to due process by failing to hold a

17   competency hearing.  Here, the trial judge reasonably relied on the opinion of the appointed

18   expert to evaluate whether petitioner was competent to stand trial and in deciding not to hold a

19   hearing pursuant to California Evidence Code § 1368.  Further, as explained by the state

20   appellate court, petitioner's behavior during trial, including his own trial testimony given after he

21   had been placed on suicide watch, reflects that he had a rational and factual understanding of the

22   proceedings and was able to consult with his trial counsel and  assist in his defense.

23   Accordingly, petitioner is not entitled to relief on this claim.

24       E.  <u>Sentencing</u>

25          Petitioner's final claim is that pursuant to the decision in <u>Blakely v. Washington</u>,

26   542 U.S. 296, 303-04 (2004), the imposition of the upper term for one count of assault with

intent to commit rape, the upper term on two counts of rape with force and the imposition of

consecutive sentences for three counts of forcible rape, based on facts that were not found by the

jury nor admitted by him, violated his Sixth Amendment right to a jury trial.  (Pet. at 39-42.)  The

California Court of Appeal rejected these arguments, reasoning as follows:

> Applying the Sixth Amendment to the United States Constitution, the United States Supreme Court held in Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L. Ed.2d 435] (hereafter Apprendi) that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt.  (Id. at p. 490.)  For this purpose, the statutory maximum is the maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant.  Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional findings of fact, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts.  (Blakely v. Washington (2004) 542 U.S. 296, ---- [159 L. Ed.2d 403, 413-414] (hereafter Blakely ).)

> Relying on Apprendi and Blakely, defendant claims the trial court erred in imposing (1) the upper terms on the count of assault with intent to commit rape and two of the three counts of rape with force, and (2) consecutive sentences on the three counts of rape with force.  He asserts the court erred by relying upon facts not submitted to the jury and proved beyond a reasonable doubt, thus depriving him of the constitutional right to a jury trial on facts legally essential to the sentence.

> The contention fails since defendant did not raise the issue in the trial court.

> In United States v. Cotton (2002) 535 U.S. 625 [152 L. Ed.2d 860] (hereafter Cotton ), a case decided after its decision in Apprendi, the Supreme Court unanimously held that a defendant's failure to object to Apprendi error in the trial court forfeits the right to raise it on appeal if the error did not seriously affect the fairness, integrity, and public reputation of the judicial proceedings, i.e., if a factor relied upon by the trial court in violation of Apprendi was uncontroverted at trial and supported by overwhelming evidence.  (Cotton, supra, 535 U.S. at p. 631.)

> Such is the case here.  The trial court cited the fact defendant took advantage of a position of trust or confidence to commit the offense as reasons for imposing the upper terms and consecutive sentences.  (Cal. Rules of Court, rule 4.421(a)(11).)  Defendant did not raise an Apprendi objection at the time of sentencing, and the facts used in imposing the consecutive sentence were uncontested

at trial and supported by overwhelming evidence.  Defendant admitted he resided with the victim and was the victim's stepfather.  Consequently, defendant has forfeited his right to raise Apprendi/Blakely.  (Cotton, supra, 535 U.S. at p. 631; see People v. Cruz (1995) 38 Cal. App.4th 427, 433 [one valid factor is sufficient to support the upper term].)

Moreover, defendant's claim of error regarding the imposition of consecutive terms fails on the merits because the rule of Apprendi and Blakely does not apply to our state's consecutive sentencing scheme.

Penal Code section 669 imposes an affirmative duty on a sentencing court to determine whether the terms of imprisonment for multiple offenses are to be served concurrently or consecutively.  (In re Calhoun (1976) 17 Cal.3d 75, 80-81.)  However, that section leaves this decision to the court's discretion.  (People v.. Jenkins (1995) 10 Cal.4th 234, 255-256.)  "While there is a statutory presumption in favor of the middle term as the sentence for an offense [citation], there is no comparable statutory presumption in favor of concurrent rather than consecutive sentences for multiple offenses except where consecutive sentencing is statutorily required.  The trial court is required to determine whether a sentence shall be consecutive or concurrent but is not required to presume in favor of concurrent sentencing."  (People v. Reeder (1984) 152 Cal. App.3d 900, 923.)

Penal Code section 669 provides that upon the sentencing court's failure to determine whether multiple sentences shall run concurrently or consecutively, then the terms shall run concurrently.  This provision reflects the Legislature's policy of "speedy dispatch and certainty" of criminal judgments and the sensible notion that a defendant should not be required to serve a sentence that has not been imposed by a court.  (See In re Calhoun, supra, 17 Cal.3d at p. 82.)  This provision does not relieve a sentencing court of the affirmative duty to determine whether sentences for multiple crimes should be served concurrently or consecutively.  (Ibid.)  And it does not create a presumption or other entitlement to concurrent sentencing.  Under Penal Code section 669, a defendant convicted of multiple offenses is entitled to the exercise of the sentencing court's discretion, but is not entitled to a particular result.

The sentencing court is required to state reasons for its sentencing choices, including a decision to impose consecutive sentences.  (Cal. Rules of Court, rule 4.406(b)(5); People v. Walker (1978) 83 Cal. App.3d 619, 622.)  This requirement ensures that the sentencing judge analyzes the problem and recognizes the grounds for the decision, assists meaningful appellate review, and enhances public confidence in the system by showing sentencing decisions are careful, reasoned, and equitable.  (People v. Martin (1986) 42

1   Cal.3d 437, 449-450.)  But the requirement that reasons for a
    sentence choice be stated does not create a presumption or
2   entitlement to a particular result.  (See In re Podesto (1976) 15
    Cal.3d 921, 937.)
3
    Therefore, entrusting to trial courts the decision whether to impose
4   concurrent or consecutive sentencing under our sentencing laws is
    not precluded by the decision in Blakely.  In this state, every
5   person who commits multiple crimes knows that he or she is
    risking consecutive sentencing.  While such a person has the right
6   to the exercise of the trial court's discretion, the person does not
    have a legal right to concurrent sentencing, and as the Supreme
7   Court said in Blakely, "that makes all the difference insofar as
    judicial impingement upon the traditional role of the jury is
8   concerned."  (Blakely, supra, 542 U.S. at p. ---- [159 L. Ed.2d at p.
    417].)
9
    Accordingly, the rule of Apprendi and Blakely does not apply to
10  California's consecutive sentencing scheme.

11  (Opinion at 16-20.)

12          A criminal defendant is entitled to a trial by jury and to have every element

13  necessary to sustain his conviction proven by the state beyond a reasonable doubt.  U. S. Const.

14  amends. V, VI, XIV.  In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States

15  Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact

16  other than a prior conviction that "increases the penalty for a crime beyond the prescribed

17  statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt."  In

18  Blakely, the United States Supreme Court decided that a defendant in a criminal case is entitled

19  to have a jury determine beyond a reasonable doubt any fact that increases the statutory

20  maximum sentence, unless the fact was admitted by the defendant or was based on a prior

21  conviction.  542 U.S. at 303-04.  The Supreme Court also clarified the definition of "statutory

22  maximum" for purposes of this constitutional rule:  "the relevant 'statutory maximum' is not the

23  maximum sentence a judge may impose after finding additional facts, but the maximum he may

24  impose without any additional facts."  Id. at 2537.  In United States v. Booker, 543 U.S. 220

25  (2005), the United States Supreme Court applied Blakely to the Federal Sentencing Guidelines.

26  There, the court clarified that "'the statutory maximum' for Apprendi purposes is the maximum

                                                    26

1   sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or

2   admitted by the defendant."  Id. at 232.  In Cunningham v. California, 549 U.S. 270 (2007), the

3   Supreme Court, citing Apprendi and Blakely, held that California's Determinate Sentencing Law

4   violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper

5   term based on facts found by the court rather than by a jury.  The Supreme Court determined that

6   "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory

7   maximum."  Id. at 288.  The Ninth Circuit has subsequently held that Cunningham may be

8   applied retroactively on collateral review."  Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

9         Assuming arguendo that Apprendi and Blakely apply to the circumstances of

10  petitioner's sentence, his claim regarding the imposition of consecutive rather than concurrent

11  sentences fails.  Blakely requires a jury determination of all facts necessary to support a sentence

12  beyond the statutory maximum.  When, as here, a defendant is sentenced to an indeterminate

13  term, the statutory maximum is life in prison.  Additional consecutive sentences serve only to

14  increase the statutory minimum sentence, which does not implicate the Sixth Amendment.  See

15  McMillan v. Pennsylvania, 477 U.S. 79, 82-83 (1986).

16        With regard to petitioner's claim that Apprendi and Blakely precluded the

17  imposition of the upper term for one count of assault with intent to commit rape and two terms of

18  forcible rape in his case, the court concludes that any error is harmless.  See Washington v.

19  Recuenco, 548 U.S. 212, 218-22 (2006) (Apprendi errors are subject to harmless error standard

20  as applied in Neder v. United States, 527 U.S. 1, 8 (1999)); United States v. Zepeda-Martinez,

21  470 F.3d 909, 913 (9th Cir. 2006); Abeyta v. Giurbino, 607 F. Supp.2d 1123, 1135-37  (C.D.

22  Cal. 2009).  "Under Recuenco and Neder, an error is harmless if the court finds beyond a

23  reasonable doubt that the result 'would have been the same absent the error.'"  Zepeda-Martinez,

24  470 F.3d at 913 (quoting Neder, 527 U.S. at 19).  Where the record contains "overwhelming" and

25  "uncontroverted" evidence supporting an element of the crime, the error is harmless.  Neder, 527

26  U.S. at 17, 18.  See also Abeyta, 607 F. Supp.2d at 1135.  On the other hand, the error is not

harmless if "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." <u>Neder</u>, 527 U.S. at 19.  <u>See also</u> <u>Abeyta</u>, 607 F. Supp.2d at 1135. [5]

Here, the record contains overwhelming and uncontroverted evidence supporting the sentence imposed upon petitioner by the trial court.  As noted by the California Court of Appeal, the trial court cited the fact that petitioner took advantage of a position of trust or confidence to commit the offenses as the reason for imposing the upper terms.  (RT at 1052-53.) <u>See</u> Cal. Penal Code § 12022.7; Cal. Rules of Court, rule 4.421(a)(11).  The sentencing judge's finding that petitioner took advantage of a position of trust or confidence in committing the crimes was "uncontested at trial and supported by overwhelming evidence.  Defendant admitted at trial that he resided with the victim and was the victim's stepfather." (Opinion at 18.)  Under these circumstances, any <u>Blakely</u> error by the trial court in sentencing petitioner to the upper term would not have had a substantial and injurious effect or influence on the jury verdict.  Put another way, the sentence imposed in petitioner's case would have been the same had this issue been submitted to the jury.[6]  <u>See</u> <u>Palmieri v. Giurbino</u>, No. 06-56739, 249 F. Appx. 677 (9th Cir. Oct. 2, 2007) (state court reasonably applied federal law in concluding that any <u>Blakely</u> error was harmless)[7]; <u>Lara v. Marshall</u>, No. CV 08-3988 SJO (FMO), 2009 WL 910224, at *21 (C.D. Cal.

---

[5] <u>Neder</u> and <u>Zepeda-Martinez</u> were decisions rendered on direct appeal and therefore articulated the harmless error standard applicable to a case in that posture.  In a habeas corpus action, relief is not available unless the trial error "had substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637.

[6] Citing the decision in <u>United States v. Cotton</u>, 535 U.S. 625 (2002), the California Court of Appeal concluded that petitioner had waived his <u>Apprendi</u> claim by failing to raise it on appeal.  In <u>Cotton</u> the Supreme Court explained the standard of review to be applied on appeal to an <u>Apprendi</u> objection that was not preserved in the district court.  That issue is not before the court in this habeas corpus action.  The court also notes that in <u>People v. Black</u>, 41 Cal. 4th 799, 812 (2007), the California Supreme Court concluded that with respect to sentencing proceedings preceding the <u>Blakely</u> decision, as did petitioner's, "a claim of sentencing error premised upon the principles established in <u>Blakely</u> and <u>Cunningham</u>, is not forfeited on appeal by counsel's failure to object at trial."  In light of the above, the undersigned will not rely on the decision in <u>Cotton</u> in addressing petitioner's <u>Apprendi</u> claim.

[7] See fn. 4, <u>supra</u>.

28

1   April 1, 2009) (finding <u>Apprendi</u> violation harmless due to the presence of factors properly

2   supporting the imposition of the upper term); <u>McElroy v. Castro</u>, Civil No. 06cv1180-L (AJB),

3   2008 WL 2025286, at *21 (S.D. Cal. April 4, 2008) (finding that although the trial judge relied in

4   part on factors not found by the jury in imposing the upper term, the error was harmless because

5   the trial judge would have imposed the same term based solely on proper factors and the sentence

6   would have been the same); <u>Esmay v. Runnels</u>, No. C 06-863 MHP (pr), 2007 WL 3105072, at

7   *10-12 (N.D. Cal. Oct. 23, 2007) (any <u>Apprendi</u> error found to be harmless); <u>Wright v. Adams</u>,

8   No. C 06-113 MHP (pr), 2007 WL 3105079, at *5-7 (N.D. Cal. Oct. 23, 2007) (same).

9           Accordingly, for the foregoing reasons, petitioner is not entitled to relief on his

10  claims of sentencing error.

11          F.  <u>Claims Raised in the Traverse</u>

12          Petitioner raises several claims in his traverse which are not contained in his

13  petition.  For instance, he now contends that the evidence introduced at his trial was insufficient

14  to support his conviction, that one of the jury instructions erroneously informed the jury that

15  consent of the victim was not a defense to the crimes charged against him, and that the

16  prosecutor's "charging procedure" rendered his trial fundamentally unfair.  (Traverse at 6-10.)

17  To the extent petitioner is attempting to belatedly raise new claims by way of his traverse, relief

18  should be denied.  <u>See</u> <u>Cacoperdo</u>, 37 F.3d at 507 (a traverse is not the proper pleading to raise

19  additional grounds for relief); <u>see also</u> <u>Greenwood v. Fed. Aviation Admin.</u>, 28 F.3d 971, 977

20  (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly in a party's

21  opening brief").  Accordingly, this court will not address any new claims mentioned by petitioner

22  for the first time in his traverse.[8]

23  _____

24          [8]  The court notes that petitioner previously requested a stay of this action in order to
     exhaust in state court a claim that the evidence introduced at his trial was insufficient to support
25   his conviction, but then specifically abandoned that claim, informing the court that it was not as
     meritorious as the claims already before the court in the instant petition.  <u>See</u> "Response by
26   Ronald Wayne Cooley re Order on Motion to Stay" filed May 18, 2006, and "Motion to Proceed
     with Exhausted Claims, Dismiss the Unexhausted Claims, and Lift the Stay" filed June 4, 2009.

                                               29

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 3, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
cooley870.hc

30